█ In the Matter of PATRICIA CAVANAUGH, Respondent, v WILLIAM J. MADDEN, Appellant. [751 NYS2d 225] —In a family offense proceeding pursuant to Family Court Act article 8, the father appeals from an order of the Family Court, Westchester County (Klein, J.), dated October 12, 2001, which, after a hearing and upon a finding that the father committed an offense which would constitute harassment in the second degree, granted an order of protection against him and in favor of his eldest son.

Ordered that the order is reversed, on the law, without costs or disbursements, and the petition is dismissed.

The petition alleges that "[o]n or about 05/09/2001" the appellant father, inter alia, committed the crime of harassment in the second degree against his eldest son. Harassment in the second degree is a family offense (*see* Family Ct Act § 812). Insofar as is relevant here, it is defined as engaging in conduct with intent to harass, annoy, or alarm another person, which

conduct serves to "alarm or seriously annoy such other person and which serve[s] no legitimate purpose" (Penal Law § 240.26 [3]). The petitioner bore the burden of establishing the offense by a "fair preponderance of the evidence" (Family Ct Act § 832). The petitioner was required to prove "intent to harass, annoy or alarm another person" (see People v Jemzura, 29 NY2d 590).

The evidence adduced at the hearing established that, on May 9, 2001, the date in issue, the father arrived at the mother's house to pick up his younger children for visitation. The father acknowledged at the hearing that he parked his car in the driveway, got out of his car, and walked directly to the front door. Several of the children greeted him, and the two youngest children went into his car.

As the father returned to his car and was on the front lawn 10 feet away from the car, the eldest son approached him, holding a baseball bat. The eldest son cursed and threatened to call the police. The father claimed he said nothing in response. He turned around to face the eldest son who swung at him with the bat. The father grabbed the bat, wrestled it away from his son, striking the son's head, and placed the bat in the back seat of his car.

As the father was entering his car, the eldest son yelled to his friends who were sitting on the porch, "Get him," and one of the friends approached the father with a chain. The father took the bat out of the car, held the bat up to the boy with the chain, "disarmed him" and put both the bat and the chain in the car. The father got into his car and his son spat at the car.

A police officer who arrived at the scene after the incident occurred testified that after speaking to the father and the parties' eldest son, he concluded that the son was accidentally struck in the head with the bat. The son acknowledged to the police that he spat on his father's car but claimed he did so accidentally.

The mother testified that on the day in question, she received a telephone call at work from the eldest son that the father "was on the property again * * * that he was going to call the police because he couldn't take this." The mother claimed that in 1999 the court granted an order of protection which required "curbside pick up" for the other children. Contrary to the mother's testimony, the 1999 order of protection also authorized pickup "at the front door" which was done here. In any event, the mother acknowledged that the order of protection expired in January 2001, prior to the incident in question.

The parties' eldest son, who was under psychiatric treatment and on medication, did not testify at the hearing. Two of the

parties' children, interviewed in camera, stated that the relationship between the father and the eldest son was hostile.

At the conclusion of the hearing, the court found that based upon the credible testimony the father committed harassment in the second degree. We reverse.

The petition against the father alleged conduct occurring on or about May 9, 2001. Accordingly, the father's conduct on other occasions could not be the basis of the adjudication that he was guilty of a family offense (see *Matter of Whittemore v Lloyd,* 266 AD2d 305).

The father was on the premises for a legitimate purpose: to pick up his children for visitation. His conduct did not violate any order of protection. Intent to harass was not established. The father did not initiate any contact with his eldest son. At the time the altercation occurred, he was leaving the premises.

Owing to insufficiency of the evidence, the order appealed from must be reversed and the petition dismissed. In light of the foregoing, we need not address any other issue. Ritter, J.P., Santucci, Goldstein and Mastro, JJ., concur.